629 So.2d 1029 (1993)
Dee GILBERTSON and Daniel Gilbertson, as personal representatives of the Estate of Daniel Gilbertson, a minor, deceased, for the Benefit of Dee Gilbertson surviving mother, Daniel Gilbertson surviving father, and the Estate of Daniel S. Gilbertson, deceased, a minor, Appellants,
v.
LENNAR HOMES, INC., The Meadows of Miramar Homeowners Association, No. 2, Inc. and The Meadows of Miramar Property Association, Inc., Appellees.
No. 92-2488.
District Court of Appeal of Florida, Fourth District.
December 29, 1993.
Motions for Rehearing, Clarification and Certification Denied February 8, 1994.
*1030 Rossman & Baumberger, P.A., and Marc Cooper and Christine M. NG of Cooper & Wolfe, P.A., Miami, for appellants.
Philip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellee-Lennar Homes, Inc.
Richard A. Sherman and Rosemary B. Wilder of Richard A. Sherman, P.A., and Daniel L. Haverman and Bruce A. Chaimowitz of Green, Haverman & Ackerman, P.A., Fort Lauderdale, for appellee-The Meadows of Miramar Property Ass'n, Inc.
GUNTHER, Judge.
This is an appeal from summary final judgments in favor of the defendants, Lennar Homes, Inc., n/k/a F & R Builders (Lennar) and The Meadows of Miramar Property Association, Inc. (Property Association). The Gilbertsons sued for the wrongful death of their three year old son, who drowned in a lake built and maintained by the defendants. We agree with the Gilbertsons' contention that the trial court erred in granting the summary final judgments in the face of diametrically opposed affidavits and substantial evidence in opposition to the motions. The affidavits unquestionably created a dispute as to whether the lake was constructed in violation of South Florida Water Management District (SFWMD) regulations and a permit requiring a 4:1 slope on the sides of the lake. Although Florida common law does not generally hold the owner of a body of water liable for the drowning death of a child absent a trap or an attractive nuisance, we hold that the SFWMD regulations and permit issued in this case impose a duty on Lennar that removes this case from the general rule. Accordingly, we reverse.
Lennar dredged the lake in 1979 as part of its development of a residential project. In February 1987, Lennar deeded the project, including the lake, to the Property Association. The Gilbertsons' complaint alleged, inter alia, that the defendants were negligent in constructing the lake or in failing to take appropriate precautions after its construction to prevent injury.
In moving for summary judgment, Lennar argued that the lake met all relevant state, county and municipal building requirements in effect at the time of construction and that the lake, as constructed, did not constitute a dangerous condition or trap. Lennar maintained that even if an applicable SFWMD regulation existed, a violation of the regulation cannot remove this case from the long-standing rule that no liability for a child's drowning exists unless the body of water is a dangerous condition or trap. The Property Association sought summary judgment on the single ground that it owed no duty to plaintiffs because the lake did not constitute a dangerous condition or trap. Neither defendant raises any other issues in this appeal. Thus, the defendants make the single argument that they owed no duty to the Gilbertsons because the lake was not a dangerous condition or trap.
In response, the Gilbertsons disagreed with the defendants' assertions that the lake met all governmental requirements in effect at the time of construction, that the lake did not constitute a trap, and that therefore, no duty was owed to the plaintiffs. According to the Gilbertsons, the defendants breached a duty owed to them because there were applicable SFWMD regulations and a permit requirement in existence at the time the lake was constructed which Lennar violated. In support of their position, the Gilbertsons presented evidence and an affidavit that alleged, inter alia, that the lake was constructed in violation of applicable government regulations and the SFWMD permit.
*1031 Citing three cases, the trial court granted the defendants' motions for summary judgment. Scott v. Future Investments of Miami, Inc., 559 So.2d 726 (Fla. 4th DCA 1990); Saga Bay Property Owners Ass'n v. Askew, 513 So.2d 691 (Fla. 3d DCA 1987), rev. denied, 525 So.2d 876 (Fla. 1988); Kinya v. Lifter, Inc., 489 So.2d 92 (Fla. 3d DCA), rev. denied, 496 So.2d 142 (Fla. 1986).
As the following discussion will demonstrate, we conclude the SFWMD permit requirement imposed a duty on Lennar to construct the lake with a 4:1 slope. If Lennar breached this duty, then a question arises as to whether a violation of the permit requirement enabled the Gilbertsons to maintain a cause of action for negligence. The lake in dispute is under the jurisdiction of SFWMD, the applicable permitting authority for construction or alteration relating to the management and storage of surface water. SFWMD was created when the Florida legislature enacted Chapter 373, the Florida Water Resources Act of 1972 (The Act), in order to conserve and control the waters of this state to realize their full beneficial use. Ch. 72-299, § 3, at 1082, Laws of Fla. The legislature's stated statutory policy goals were:
(a) To provide for the management of water and related land resources;
(b) To promote the conservation, development, and proper utilization of surface and ground water;
(c) To develop and regulate dams, impoundments, reservoirs, and other works and to provide water storage for beneficial purposes;
(d) To prevent damage from floods, soil erosion, and excessive drainage;
(e) To preserve natural resources, fish and wildlife;
(f) To promote recreational development, protect public lands, and assist in maintaining the navigability of rivers and harbors; and
(g) Otherwise to promote the health, safety, and general welfare of the people of this state.

§ 373.016(2), Fla. Stat. (1979) (emphasis added).
The Act charged the Department of Environmental Regulation (DER) with the administration of the Act on the state level. § 373.026, Fla. Stat. (1979). To assist the DER, the Act also created five water management districts, each with the authority to:
(1) Contract with public agencies, private corporations, or other persons; sue and be sued; and appoint and remove agents and employees, including specialists and consultants.
(2) Issue orders to implement or enforce any of the provisions of this chapter or regulations thereunder.

(3) Make surveys and investigations of the water supply and resources of the district and cooperate with other governmental agencies in similar activities.
§ 373.083, Fla. Stat. (1979) (emphasis added).
Under section 373.171(1)(a), Florida Statutes (1979), the governing board of each water management district is authorized to issue rules and regulations to "protect the public health, safety, and welfare and the interests of the water users" of this state. These rules and regulations must be filed with the Department of State. § 373.171(4), Fla. Stat. (1979).
The SFWMD, created under section 373.069(1)(e), Florida Statutes (1979), promulgated a Management and Storage of Surface Waters Permit and Information Manual, which it was authorized to promulgate under Florida Administrative Code Rule 16K-4.035 (1977). See Fla. Admin. Code R. 40E-1.659 (the permit form and instructions are incorporated and published by reference into the Florida Administrative Code); see also Fla. Admin. Code R. 17-300.200 (the DER adopts by reference the SFWMD basis for review for surface water management permits). The Management and Storage of Surface Waters Permit Manual suggested that:
for purposes of public safety, water quality enhancement and maintenance, all wet retention/detention areas should have side slopes no steeper than 4:1 (horizontal:vertical) out to a depth of two feet below the *1032 control elevation, or an equivalent substitute.
SFWMD manual section 3.2.4.4.1(d).
Lennar applied for, and received, a SFWMD Surface Water Management Permit on October 11, 1979. See § 373.413(1), Fla. Stat. (1979); Fla. Admin. Code R. 16K-4.03 (1977) (the SFWMD may impose reasonable conditions to the permits). Lennar's permit application contained drawings of the proposed lake with a 4:1 horizontal:vertical slope. The relevant provision of the permit issued to Lennar specifically required that:
LAKE SIDE SLOPES SHALL BE 4:1 (HORIZONTAL:VERTICAL) TO A DEPTH OF TWO FEET BELOW THE CONTROL ELEVATION.
Thus, as the foregoing discussion demonstrates, at the time the lake was constructed, there were governmental regulations and a SFWMD permit requirement of a 4:1 slope which Lennar had a duty to follow in constructing the lake in question.
On the question of whether the defendants breached any duty, the Gilbertsons introduced a survey of the lake as well as an affidavit from a civil engineer. The survey showed that the slope was steeper than the 4:1 slope requirement of the SFWMD permit. In the affidavit the civil engineer stated, inter alia, that in his opinion Lennar had not complied with the SFWMD permit requirement; that the side slopes as demonstrated by the survey violated the minimum requirement of Section 3.2.4.4.1(d) of the SFWMD; and that the 4:1 slope requirement served a public safety purpose. The defendants countered with a single affidavit from a land surveyor, who stated, "[t]o my knowledge the canal where the minor Plaintiff drowned was not in violation of any codes or ordinances created by any governmental entity on or before May 13, 1987." Thus, we conclude the conflicting affidavits create an issue of whether Lennar violated any SFWMD regulations or permit requirement.
Lennar, however, argues that despite the dispute in the lake's slope requirement, the summary judgment should be affirmed because, as a matter of law, Lennar owed no duty to the plaintiffs. According to Lennar, Florida common law does not hold the owner of a body of water liable for the drowning death of a child absent a trap or an attractive nuisance. While cases like Saga Bay, supra, provide the general rules determining liability where there is no violation of an applicable statute, regulation or ordinance, they are not dispositive of this case, where such a violation is alleged. Thus, although we agree with Lennar's statement of the rule that under Florida common law the owner of a body of water owes no duty absent a trap or an attractive nuisance, the facts of this case present a different rule.
The different rule here is that a duty is imposed by a government safety regulation. In this case, pursuant to a valid and statutorily mandated purpose of protecting public safety, the SFWMD issued Lennar a permit to excavate the lake with a required 4:1 slope. As indicated in the evidence, the public safety rationale behind requiring a 4:1 slope is that there is inherent danger in constructing a steep slope at the very edge of a body of water. Constructing a 4:1 slope creates a shallow shelf at the edge of a body of water which enables people, including children, to climb out from danger and thus minimize the risk of drowning or injury. Thus, we conclude the SFWMD regulations and permit requirement of a 4:1 slope created a duty which, if breached by Lennar, would give rise to a cause of action for negligence.
In a case similar to the instant case, the Third District affirmed a jury verdict that found the owner/developer of an apartment complex was not negligent in the drowning death of a young child. Kinya v. Lifter, Inc., 489 So.2d 92 (Fla. 3d DCA), rev. denied, 496 So.2d 142 (Fla. 1986). In analyzing the case, the Kinya court stated that evidence of a party's compliance or violation of an ordinance, regulation, or statute was admissible on the issue of negligence. Id. at 94. In addition, the court specifically found that "[a]t the time the lake was excavated, it was done with the permission from the proper authorities and, upon completion, had the necessary `slope' along its shore and into the water." Id. at 93. Thus, we interpret Kinya to suggest that if the defendants in that case had violated the slope requirement, a cause of action for such a violation could have existed.
*1033 Machin v. Royale Green Condominium Ass'n, 507 So.2d 646 (Fla. 3d DCA 1987), is another case involving the drowning of a small child in an artificial body of water  the swimming pool at the Royale Green complex. The district court reversed the summary judgment entered in favor of the landowner because the plaintiffs presented evidence that the gate to the pool did not self-close or have a spring lock in violation of the Dade County Code. Therefore, Machin suggests that a violation of a government regulation is a breach of duty enabling the plaintiff to maintain a cause of action for negligence.
In summary, the Gilbertsons' affidavit alleged, inter alia, that when completed the lake violated the 4:1 slope requirement of the SFWMD permit issued to Lennar. The defendants' affidavit contradicted the plaintiffs' position and stated that the excavation of the lake was not in violation of any codes or ordinances created by any governmental entity. Thus, because the SFWMD regulations and permit imposed a duty on Lennar and there is a dispute as to whether Lennar violated the regulations and permit, the trial court erred in granting summary judgment in favor of the defendants. Accordingly, we reverse.
REVERSED AND REMANDED.
POLEN and KLEIN, JJ., concur.